**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **DON ACREE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 3:11-0982** |
| | ) | **Judge Sharp** |
| **METROPOLITAN GOVERNMENT OF** | ) | |
| **NASHVILLE AND DAVIDSON** | ) | |
| **COUNTY,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM**

In this action removed from state court, the Magistrate Judge has entered a Report and
Recommendation ("R & R") (Docket No. 25), recommending that Plaintiff's federal claim for false
imprisonment under 42 U.S.C. § 1983 be dismissed as untimely, and that the Court decline to
exercise supplemental jurisdiction over Plaintiff's state law claims. Plaintiff has filed Objections
(Docket No. 28) to the R & R. Upon *de novo* review, Fed. R. Civ. P. 72(b), the Court agrees with
the recommendations in the R & R, and will overrule Plaintiff's Objections thereto.

**I. DISCUSSION**

In the R & R, the Magistrate Judge set forth the pertinent facts from Plaintiff's Complaint[1]
as follows:

Plaintiff was arrested on December 9, 2009 and booked in the Davidson

---

[1] The Court notes that Plaintiff filed an Amended Complaint, even though the Magistrate Judge had
entered an Order (Docket No. 15) staying discovery, and denying Plaintiff's request to amend pending ruling
on the Motion to Dismiss (Docket No. 2). On the very day that Defendants filed a Motion to Dismiss the
Amended Complaint (Docket No. 23), the Magistrate Judge entered his R & R. Regardless, the allegations
which form the basis for Plaintiff's Complaint and Amended Complaint are the same and, under either
Complaint, his federal claims under Section 1983 are untimely.

County Sheriff's Office (DCSO) in Nashville, TN. (Docket Entry 1-1, p. 3). He moved to the Hill Detention Center, a DCSO facility, "a few days" later. On January 11, 2010, Plaintiff was convicted of criminal contempt of court and Judge Randy Kennedy sentenced him to 330 days of incarceration, with credit for time served. *Id*.

According to the Plaintiff, the "sentence of 330 days would require that [he] be released on November 4, 2010." *Id*. Plaintiff claims that he "routinely informed his case officer, Mrs. Oliver, throughout his incarceration, that the sheriff's department computer did not correctly reflect the proposed release date[,]" as that computer apparently indicated a release date of December 4, 2010. Id. Plaintiff alleges that Jim Combs, of the "Sheriff's Department time computation department," computed the incorrect release date. Plaintiff claims that his allegedly-incorrect release date was listed on the computer "from the first time that [Plaintiff] ever met with Mrs. Oliver (which would have been in late December 2009)." When Plaintiff informed Mrs. Oliver about the error, she allegedly responded that his "attorney was responsible for changing the date of release on the sheriff's department's computers." Id. Plaintiff claims that he informed Mrs. Oliver that he "represented himself" and that she knew Plaintiff called attorney Greg King on "several occasions" but did not receive a reply. (*Id*., p. 3-4).

Pursuant to an appeal of the contempt ruling, Davidson County Judge Joe Binkley, Jr. reduced Plaintiff's sentence to 240 days. (*Id*., p. 4). According to Plaintiff, this reduction provided for a new release date of August 6, 2010, subject to extradition to Glynn County, Georgia. *Id*. Plaintiff asserts that this new release date "was never updated on the sheriff's department's computers." *Id*. Plaintiff claims that he once again informed Mrs. Oliver about the incorrect release date–and that "Mrs. Oliver, acting under color of state law, once again stated that it was the responsibility of [Plaintiff's] attorney to settle the matter of a release date."

On August 6, 2010, the day he claims he should have been released, Plaintiff remained in county jail. Id. Plaintiff informed Mrs. Oliver that he had not been released, but should have been, "more than once after August 6, 2010." *Id*. Mrs. Oliver allegedly "took no action to correct this deficiency." *Id*.

In "late August, 2010," Plaintiff was assigned a new case officer who took the place of Mrs. Oliver. Plaintiff's complaint does not specify a name, but notes the officer was "a deputy sheriff of Davidson County Sheriff's Office . . . acting under color of state law." Plaintiff alleges that, although he informed the new case officer "that the sheriff's department computer did not accurately reflect his release date . . . [and] that he should have been released on August 6,2010[,]" the case officer nonetheless failed to correct the deficiency." *Id*.

Plaintiff remained incarcerated at Hill Detention Center until September 14, 2010, when he was extradited to Glynn County, Georgia. (Id., p. 5). Plaintiff filed his

complaint on September 8, 2011[.]

(Docket No. 25 at 3-4).

Plaintiff does not object to the Magistrate Judge's summary of the facts. Nor does he take exception to the Magistrate Judge's observation that, in Tennessee, Section 1983 actions are governed by a one year statute of limitations, T.C.A. § 28-3-104(a)(3), or even with the observations that, as a general matter, "federal law provides that the 'statute of limitations commences to run when the plaintiff knows or has reason to know of the injury which is the basis of his action." (Docket No. 25 at 5, quoting, Servier v. Tennessee, 742 F.2d 262, 272 (6th Cir. 1984)). What Plaintiff does object to, however, is the Magistrate Judge's reliance on Abner v. Collins, 2009 WL 8015173 at *6 (N.D. Ohio Mar. 27, 2009) for the proposition that a false imprisonment claim begins to run when a plaintiff has "actual knowledge" that he was being falsely detained, and his reliance on Davis v. Clark County Bd. of Comm's, 2010 WL 33651 at *8 (S.D. Ohio Jan. 21, 2010), which rejected plaintiff's assertion that his false imprisonment claim should have accrued upon his release from imprisonment. Plaintiff posits that this case is governed by the Supreme Court's decision in Wallace v. Kato, 549 U.S. 384 (2006), and, under that case, his cause of action accrued when he was released from imprisonment.

Admittedly, there is language in Wallace which can be read to support Plaintiff's position:

> The running of the statute of limitations on false imprisonment is subject to a distinctive rule – dictated, perhaps, by the reality that the victim may not be able to sue while he is still imprisoned: "Limitations begin to run against an action for false imprisonment when the alleged false imprisonment ends." 2 H. Wood, Limitation of Actions § 187d(4), p. 878 (rev. 4th ed.1916); see also 4 Restatement (Second) of Torts § 899, Comment c (1977); A. Underhill, Principles of Law of Torts 202 (1881).

Id. at 389. However, that language must be read in context.

In Wallace, the Supreme Court was presented with a fact situation where a petitioner was allegedly falsely imprisoned until his conviction was later set aside, and the question was how to "to determine when petitioner's false imprisonment came to an end." Id. Answering the question, the Supreme Court wrote: "Reflective of the fact that false imprisonment consists of detention without legal process, a false imprisonment ends once the victim becomes held pursuant to such process – when, for example, he is bound over by a magistrate or arraigned on charges." Id.

Obviously, this answer is unworkable in this case because Plaintiff appeared before a judicial officer in January 2010, but his cause of action for false imprisonment could not have accrued at that point since he was properly under the long arm of the law until his lawfully imposed sentence was served. Nor does it necessary follow, as Plaintiff argues, that his claim for false imprisonment could only begin to run when he was released from jail because the Court in Wallace specifically rejected "petitioner's contention that this false imprisonment ended upon his release from custody." Id. at 390.

Although the circumstances in Wallace differ from those presented here, critical language in that case wholly supports the Magistrate Judge's conclusion that Plaintiff's claim for false imprisonment is untimely. In the penultimate paragraph dealing with the statute of limitations issue, the Supreme Court wrote:

> Petitioner asserts that the date of his release from custody must be the relevant date in the circumstances of the present suit, since he is seeking damages up to that time. . . . Even assuming, however, that all damages for detention pursuant to legal process could be regarded as consequential damages attributable to the unlawful arrest, that would not alter the commencement date for the statute of limitations. "Under the traditional rule of accrual . . . the tort cause of action accrues, and the statute of limitations commences to run, when the wrongful act or omission results in damages. The cause of action accrues even though the full extent of the injury is not then known or predictable." 1 C. Corman, Limitation of Actions § 7.4.1, pp. 526-527 (1991) (footnote omitted); see also 54 C.J.S., Limitations of Actions §

4

112, p. 150 (2005). Were it otherwise, the statute would begin to run only after a plaintiff became satisfied that he had been harmed enough, placing the supposed statute of repose in the sole hands of the party seeking relief.

Id. at 391 (emphasis added).

Here, assuming Plaintiff's contention about his proper release date is true, he knew on August 6, 2010 that he was being held longer than he should have been under the sentence imposed by the judge, and he admittedly complained about that to the jailers on that date and thereafter. Because the original Complaint was not file in the Circuit Court until September 16, 2011, it is untimely.

Wallace aside, Plaintiff argues that accrual of his claim for false imprisonment must be tolled for the period during which he was incarcerated. This Court disagrees.

Federal courts borrow not only the state statutes of limitations, but also the state's tolling rules in Section 1983 actions. Guy v. Lexington-Fayette Urban County Govt., 2012 WL 1592745 at *8 (6th Cir. May 2, 2012); Harris v. United States, 422 F.3d 322, 331 (6th Cir. 2005). Under Tennessee law, incarceration does not toll the limitations period for a prisoner's civil action, including those governed by the statute of limitations contained in T.C.A. § 28-3-104. Griffin v. Eidson, 22 Fed. Appx. 393, 395 (6th Cir. 2001).

Having determined that Plaintiff's federal claim for false imprisonment[2] is subject to dismissal, the Court declines to exercise supplemental jurisdiction over his state law claims. This is because, as a general rule, "'if the federal claims are dismissed before trial, ... the state claims

---

[2] The Court notes that, in his Amended Complaint, Plaintiff adds a claim for cruel and unusual punishment under the Eighth Amendment. That too, however, is a claim under Section 1983 for which the one year statute of limitations applies and "begins to run when the plaintiff knows or has reason to know that the act providing the basis of his or her injury has occurred." Howard v. Rea, 111 Fed. Appx. 419, 421 (6th Cir. 2004).

should be dismissed as well.'" Harper v. Auto Alliance Intern'l, Inc., 392 F.3d 195, 210 (6th Cir. 2004) (citation omitted). "Dismissal is not mandatory, however, because supplemental jurisdiction 'is a doctrine of discretion, not of plaintiff's right.'" Id. In exercising its "broad discretion" to decide whether to continue to exercise supplemental jurisdiction over state-law claims, a court can consider such factors as "'the values of judicial economy, convenience, fairness and comity[.]'" Gamel v. City of Cincinnati, 625 F.3d 949, 952 (6th Cir. 2010) (citation omitted).

The Court's substantive involvement in this case has been limited to considering the record in relation to whether the Magistrate Judge erred in recommending dismissal of Plaintiff's federal claims on statute of limitations grounds. This limited involvement "do[es] not override the accepted principle that purely state law disputes should be decided in state court, absent the existence of a basis for federal jurisdiction." Staehling v. Metro. Gov't of Nashville and Davidson County, 2008 WL 4279839 at * 13 (M.D. Tenn. Sept. 12, 2008). Accordingly, Plaintiff's state law claims will be remanded the Davidson County Circuit Court.

## II. CONCLUSION

Based on the foregoing, the Court will enter an Order, accepting the R & R (Docket No. 25), overruling Plaintiff's objections (Docket No. 28), dismissing the federal claims, and remanding the state law claims.

_Kevin H. Sharp_

KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE